pany. Both Robitaille and Britton had told Gagen that the defendant was to furnish the moneys necessary for the plaintiff's work in equipping the building.

While the plaintiff asserts that the contract was made direct with the defendant, through Robitaille, its officer, the plaintiff apparently really relies upon the theory of the alleged authority of the Divided Metals Company as its agent, and this appears to be the only ground upon which plaintiff can fasten a liability upon the defendant, in view of the plaintiff's relations with the said company, as indicated by the correspondence and bills. All that has appeared is entirely consistent with the claim of the defendant that its connection with the Divided Metals Company was simply that of one who had advanced moneys under a trade agreement, which was the fact. Gagen testified that he was told by Britton before he ever met Robitaille as to the provisions of a contract between the Divided Metals Company and the defendant.

The relations of the two companies were defined by an agreement, bearing date October 11, 1915. It provided for the advance of $3,000 by the defendant to the company from time to time, to be used in equipping and operating the latter's manufacturing plant in the city of New York. The money was to be repaid to the defendant in three months from the date of the agreement. The defendant was to have the right to retain, from moneys that might come into its hands from time to time, sums over the estimated running expenses of the company for one month. Provision was likewise made for a possible extension of the time of repayment. The defendant was given the exclusive agency for the selling of the company's output at certain specified prices. The agreement was signed on behalf of the companies by Robitaille and Britton, as presidents respectively.

The plaintiff placed some reliance upon the foregoing agreement in its contention that the defendant was the undisclosed principal of the Divided Metals Company, but I do not see how such a deduction can be drawn. It must be found that the plaintiff failed to establish that the defendant had directly or indirectly entered into any contractual relations with it. On the contrary, the conclusion is compelled that the contract expressly entered into by the plaintiff with the Divided Metals Company by virtue of the oral agreement, and confirmed by the correspondence between them did not contemplate any liability on the part of the defendant, but exclusive credit was given the other company.

Judgment reversed, with $30 costs, and complaint dismissed, with costs. All concur.

---

(174 App. Div. 316)

SEYFORD v. SOUTHERN PAC. CO.

(Supreme Court, Appellate Division, Second Department.    June 29, 1916.)

MASTER AND SERVANT ⟨⊚⟩281(8)—INJURY TO SERVANT—SUFFICIENCY OF EVI-
DENCE—CONTRIBUTORY NEGLIGENCE.

Verdict that plaintiff was not negligent *held* against the weight of the evidence, where he did not use a tested and lighted passage around a

⟨⊚⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

hatch in a ship's bunker, but went upon the other side and in the darkness fell through another hatch.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 992; Dec. Dig. ☞281(8).]

Action by Fred Seyford against the Southern Pacific Company. A judgment for plaintiff was reversed, and complaint dismissed, by the Appellate Division (159 App. Div. 870, 145 N. Y. Supp. 22), which decision was, in turn, reversed by the Court of Appeals (216 N. Y. 618, 111 N. E. 248), and the case remitted to the Appellate Division for this rehearing as to whether the verdict for plaintiff should be set aside as against the weight of the evidence. Judgment reversed, and case remanded for a new trial.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and RICH, JJ.

J. Ard Haughwout, of New York City (Everett J. Esselstyn, of New York City, on the brief), for appellant.

Alton B. Parker, of Esopus, for respondent.

THOMAS, J. This court decided that there was not, and the Court of Appeals considered that there was, sufficient evidence to justify the submission of the issues to the jury. The present question is whether this court, that regarded the record destitute of any sustaining evidence, now finds it in preponderating quantity.

The plaintiff, serving as a competent and experienced person to look after the electrical apparatus of defendant's ships as they came to the port of New York, fell through a hatch in the upper coal bunker of one of them. Sent by his superior with the helper, Kenney, available by reason of some familiarity with the bunkers in question, plaintiff made no preparation, save to direct Kenney to "get the candles," which he did, although by the testimony of the engineer, Weiss, there was an opportunity to obtain lights. Through an open hatch the men passed from the lower to the upper bunker, where was found a lantern, as plaintiff testified, although Kenney stated that they took two lanterns from the boiler room. But I follow plaintiff's version. He took the lantern and followed Kenney along the line of the fire alarm circuit, wherein the defect to be remedied was sought, to a door or opening in a bulkhead marked "X" on plaintiff's diagram. I do not stop to consider what hatches beset their way, or the evidence tending to show that they were open. Whatever the exposure to perils in the darkness of the bunker, and their notice and appreciation of them, they came in safety to and passed through the door into another section of the coal bunker, and thence turning °to the left, and, as I understand, towards the port side, they cleared to their right an open hatch, at the side of which plaintiff deposited the lantern. Shortly beyond it, the defect in the line was found, and, after a brief time, the men went to their lunch.

Attention should be centered on the situation then before them. The question no longer is how they fared in reaching the place where they were, save as they may have been made aware of the condition of the hatches. At last they had found a safe way. Plaintiff had

made it such by traveling it and setting the lantern to guard the only danger, to wit, the open hatch. The plaintiff, acting for his own safety and as his master's agent, had a way hedged by no perilous exposure, save one, and on the edge of that he had placed his lantern, which. before him and on one side, lighted up a path of security, and on the other made visible the sole danger. When the men went to lunch, they had but to repass over the way they came to the door at "X," whence there was a short course to the daylight, without retraversing the dark and devious course by which they had approached the entrance. Which way the men went out does not appear. Plaintiff testified that he did not recollect. Kenney was not asked. So that the way known to be safe remains the only way used, so far as appears. From lunch, Kenney returned first and was at work on a ladder beyond the open hatch—with a lantern, as he says; with only candle light as plaintiff says—when the latter came back through the door at "X." In any case, plaintiff, within the door, stood and made observation. He says that he saw Kenney at work, the lantern still standing on the far side of the open hatch, about 10 feet from him, and throwing its rays between him and Kenney.

What way would a servant exercising reasonable prudence, both for himself and his master, adopt to go to Kenney, with a known, tried, guarded, safe place to his left, and utter darkness beginning at a few feet to his right? The plaintiff chose a way some 3 or 4 feet to the right side of the open hatch, and keeping his eyes on it, and not searching towards his darkened right hand, he fell into an open hatch, which he says he did not see from the door, but which he would have seen if it could have been seen. His own words describe the happening:

"I went to the hole, and having this hole in my mind, and watching this hole constantly, so I wouldn't walk into it, I walked out of the way a bit, still seeing the hole, and as I walked out, I must have stepped on a piece of coal, or my feet went into another hole."

Kenney testified that plaintiff fell through the lighted hatch at his left, and the engineer, Weiss, stated that he drew him out from underneath that hatch; but the jury adopted plaintiff's version, and the discussion is directed to that. The jury has found (1) that the plaintiff acted as a man of ordinary prudence would have done in abandoning the tried, safe, illumined way, and adopting a new way farthest from the light, with the known hatch on his left, on which he kept constant watch, with darkness on his right becoming impenetrable; (2) that the defendant did not do what a master of ordinary prudence would have done, in that it did not place the cover on the open hatch, or guard it by lighting it or otherwise; and the Court of Appeals, deciding that it was within the range of the evidence for the jury so to find, has left to this court its function to examine the record and to determine whether the jury, considering the evidence, should have so found. The man and the master, one or both, may have been negligent in the earlier stages; but the final act was the proximate cause of the injury. What had passed was informative and experimental. The safe way had been selected from amidst the darkness and dangers, and, although it had been done and established by the plaintiff,

it redounded to the advantage of the master as well as to himself. And yet the jury has found that the master should have made another way safe; that one path known to the plaintiff and guarded by light was not sufficient, but that other hatches should have been closed or lighted, lest the plaintiff (as the jury found he prudently could) should cast aside what he had adopted and fortified against danger, and essay passage along the confines of the darkness in a coal bunker that, to his knowledge, had open hatches, and that, too, without any attempt to see where he was placing his feet.

Perchance the jury considered that he was excused from looking towards his right, as discovery in that direction was impossible. True, on his left hand was a lighted hatch, which he should avoid, and on his right was obscurity, merging into complete darkness, which he disregarded. But why place himself between a peril known and seen and those unknown, in a place of recognized danger, when he had already marked out the path of avoidance? This court is constrained to answer the question to which the Court of Appeals has directed its attention by deciding that the finding of the jury was against the weight of the evidence.

The judgment and order should be reversed, and a new trial granted, with costs to abide the event. All concur.